UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| COLONIAL FUNDING NETWORK, INC., <br><br> Plaintiff, <br><br> vs. <br><br> GENUINE BUILDERS, INC., GENUINE BUILDERS, LLC, GENUINE BUILDERS CONCRETE, LLC, SOUTHERN MISSOURI CONTRACTING, LLC, JB CONCRETE CO., MIDWEST POURED FOUNDATIONS, INC., FALLS FLATWORK, LLC, JPB PROPERTIES, LLC, WATERS EDGE CONCRETE, LLC, JAMES PAUL BUNKER, <br><br> Defendants. | 4:17-CV-04119-LLP <br><br><br> ORDER DENYING DEFENDANTS' MOTION TO MODIFY SUBPOENAS <br><br> DOCKET NO. 40 |

**INTRODUCTION**

This matter is before the court on the complaint of plaintiff Colonial Funding Network, Inc. ("Colonial"), invoking this court's diversity jurisdiction. See Docket No. 1. On March 15, 2018, Colonial served four subpoenas *duces tecum* on third-party banks at which various defendants have accounts. See Docket No. 42-1 through 42-4. The banks on which the subpoenas were served have not objected to producing the documents requested, but defendants themselves have filed a motion to modify the subpoenas. See

Docket No. 40.  The district judge, the Honorable Lawrence L. Piersol, referred defendants' motion to this magistrate judge for resolution.  See Docket No. 44.

**FACTS**

For purposes of providing some context for the instant motion, the court sets forth some basic facts gleaned from Colonial's complaint and its pending partial summary judgment motion so as to sketch out the claims asserted herein.  See Docket Nos. 1 & 32.  By doing so, the court does not endorse the verity of those facts or claims.

Colonial is a servicing provider for Strategic Funding Source, Inc. and Direct Merchants Funding, LLC, doing business as Flash Advance.  Because neither Strategic Funding nor Direct Merchants Funding are parties to this lawsuit, the court refers to them collectively as "Colonial," even though the court realizes Colonial itself did not provide funding.  From June 23, 2016, to January 12, 2017, Colonial entered into six separate funding transactions whereby $1.760 million dollars were provided to defendants.

Prior to making these loans,[1] Colonial conducted a physical site visit to ensure the defendants were actual legitimate businesses with a physical presence and employees.  Defendants assert that Colonial never met face-to-face with James Bunker, however.  Colonial also conducted a background check on James Bunker, the owner or predominate owner of the defendant entities.  Colonial also alleges that prior to each of these loans, it conducted a

---

[1] Colonial calls these "funding transactions."  The court simply refers to them as loans, though the parties may be aware of distinctions between the two terms.

recorded "funding call" with James Bunker to verify the material terms of each of the loans prior to any funds being disbursed—an allegation defendants deny. Recordings of these phone calls are on file with the court in connection with Colonial's partial summary judgment motion. See Docket Nos. 37-36, -48, -54, -80, -115, and -127. Although a male voice is heard answering on behalf of James Bunker in these recordings, the court is not aware whether the male is in fact defendant Bunker. After the recorded phone calls were made, Colonial then disbursed the funds into defendants' bank accounts.

The terms of the contracts required defendants to repay the funds through periodic electronic funds transfers out of their various bank accounts. Through these transfers, defendants paid Colonial $1,161,567. In late January, 2017, however, defendants instructed their banks not to honor the electronic transfers with the result that no further payments were made to Colonial on the loans. At this time, defendants still owed Colonial approximately $1,158,932 in unpaid balances plus approximately $46,810 in fees.

Defendants notified Colonial they disputed the validity of the six transactions. Defendants asserted that defendants' employee, James Bunker's sister, Sandra Tawzer, forged Mr. Bunker's name to the contracts. Ms. Tawzer held the position of controller within Mr. Bunker's companies. Colonial asserts Ms. Tawzer had a prior felony conviction for embezzlement before defendants hired her.

Colonial asserts claims against defendants of breach of contract, promissory estoppel, unjust enrichment, *quantum meruit*, and money had and received. Defendants deny that they entered into the contracts in question and assert a litany of affirmative defenses, including equitable defenses of unclean hands and estoppel. See Docket No. 17 at pp. 20-21.

On March 15, 2018, Colonial served subpoenas *duces tecum* on Richland State Bank of Bruce, South Dakota (see Docket No. 42-1); Frontier Bank of Rock Rapids, Iowa (see Docket No. 42-2); Citizens State Bank of Arlington, South Dakota (see Docket No. 42-3); and Fishback Financial Corporation, First Bank & Trust of Sioux Falls, South Dakota (see Docket No. 42-4). Each of the subpoenas requested all documents relative to any bank account for any defendant for the period from January 1, 2016, to the date of compliance with the subpoena, which was April 2, 2018. See, e.g. Docket No. 42-1 at p. 4. Four days later, Colonial filed a motion for partial summary judgment against defendants [Docket No. 32], which motion is currently still pending.

Criminal charges against Sandra Tawzer have been filed in South Dakota state court, but those charges are not based on the transactions between defendants and Colonial which are at issue in this case. The chief investigating agent in the Sandra Tawzer case testified one year ago (May 31, 2017), before a state grand jury that Ms. Tawzer was using two men to represent themselves to be James Bunker and to approve of the loans over the phone with the loan companies. See Docket No. 36-14 at pp. 21, 24. The telephonic loans were

with out-of-state entities.  Id.  The court assumes this testimony refers at least in part to Colonial's loans to defendants.

The one loan discussed at length before the grand jury, and apparently the sole basis for the state criminal charges against Ms. Tawzer, was a loan made by a South Dakota bank, Citizens State Bank of Arlington, South Dakota, on which Ms. Tawzer forged Mr. Bunker's signature.  Id. at p. 3-5.  That loan was entirely paid back to the bank out of defendants' bank accounts.  Id. at pp. 5-6.  As to the telephonic loans, the investigating agent did not ask for a grand jury indictment as to those funds because "[t]he loans were made out to the business and cashed in the business's name, but there was so much going on within passing checks and moving checks around that at this point I have not determined where the money's final destination was."  Id. at pp. 24-25.  A grand juror asked specifically if the agent could say whether the money went to defendants or to Ms. Tawzer.  Id. at p. 25.  The agent testified, "I can't show that the money went into [Ms. Tawzer's] pocket at this point."  Id.

Nevertheless, defendants have represented in this lawsuit that all of the money from Colonial was purloined by Sandra.  Defendants have produced no documents in discovery, according to Colonial, not even their required Rule 26 initial disclosures.  Hence, Colonial has no documents that show where the funds they gave to defendants went.

Following the events of January, 2017, defendant James Bunker sought certificates of dissolution from the South Dakota Secretary of State as to defendants Midwest Poured Foundations, Inc. and Waters Edge Concrete, LLC.

5

Defendants now move to modify the four bank subpoenas. See Docket No. 40. They allege the time frame for the subpoenas are too broad. Because the first funding transaction was consummated June 23, 2016, and the last such transaction was consummated January 12, 2017, defendants want the court to limit the banks' production of documents to that approximately six-month time period. They point out that the subpoenas cover time periods after Colonial filed its complaint in this matter (on August 28, 2017), and they argue that providing financial information about defendants during the pendency of this lawsuit places them at a strategic and negotiating disadvantage.

Defendants also assert a claim that the subpoenas are unduly burdensome, but none of the banks have asserted that claim. In fact, Frontier Bank has already compiled the documents and made them available to Colonial. Colonial has declined to receive those documents until the instant motion is resolved.

Colonial points out that, in conducting its due diligence prior to sending funds to defendants pursuant to the contracts, Colonial requested and received, *inter alia*, financial documents, tax returns, bank statements, balance sheets, and profit and loss statements for various defendants spanning the time period from 2013 up through 2016. Thus, the bank records subpoenaed partially cover the due diligence period. Finally, Colonial points out that the district court entered a protective order in this matter [Docket No. 30] so that confidentiality of any documents received pursuant to the subpoenas in question would be protected.

6

**DISCUSSION**

**A.    Scope of Discovery**

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1). Rule 26 contains specific limitations relative to electronic discovery and other objections to providing discovery:

> (B)    *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify the conditions for the discovery.
>
> (C)    *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i)    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii)   the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

See Fed. R. Civ. P. 26(b)(2)(B) and (C).

The scope of discovery under Rule 26(b) is extremely broad. See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller"). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." 8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)). The Federal Rules distinguish between discoverability and admissibility of evidence. Fed. R. Civ. P. 26(b)(1), 32, and 33(a)(2) & (c). Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. These considerations are not inherent barriers to discovery, however.

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v.

8

Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery. See FED. R. CIV. P. 26(b)(1). Additionally, the court may limit the frequency and extent of discovery. See FED. R. CIV. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

**B.     Provisions of Rule 45**

Rule 45 of the Federal Rules of Civil Procedure allows a party to serve a subpoena for the production of documents on a nonparty, with notice to the other parties in the litigation. See FED. R. CIV. P. 45(a). The nonparty on whom the subpoena is served must be protected from undue burden or expense. Id. at subsection (d)(1).

9

A subpoena *must* be quashed or modified if it requires the disclosure of privileged or other protected matter if there is no exception or waiver applicable, or if the subpoena subjects a person to undue burden. Id. at subsection (d)(3)(A). A subpoena *may* be quashed or modified to protect a person affected by a subpoena if the subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information. Id. at subsection (d)(3)(B).

"Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." Charles A. Wright, Arthur R. Miller, Mary K. Kane, Richard L. Marcus, A. Benjamin Spencer, and Adam Steinman, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed. April, 2017) (hereinafter "Fed. Prac. & Proc. Civ."). As with other discovery, the relevancy issue at the time a subpoena is served is broad—the court does not evaluate whether the evidence sought is admissible, but rather whether the information is relevant to a claim or defense and is nonprivileged. Id. The court also considers whether the information is likely to lead to the discovery of admissible evidence. Id. The party seeking to quash a subpoena bears the burden of demonstrating grounds for quashing it. Id.

**C.   Whether the Subpoenas Should Be Modified**

    **1.   Standing**

Generally, a party to a lawsuit does not have standing to seek to quash a subpoena directed to a non-party—that power lies with the non-party. See

Smith v. Frac Tech Servs., Ltd., 2010 WL 3522395 at *1 (E.D. Ark. Sept. 1, 2010); Herff Jones, Inc. v. Oklahoma Graduate Servs., Inc., 2007 WL 2344705 at *3 n.4 (W.D. Ok. Aug. 15, 2007). However, when the party seeking to challenge the subpoena has a personal right or privilege in the subpoena, an exception has been made. Smith, 2010 WL 3522395 at *1; Herff Jones, Inc., 2007 WL 2344705 at *3 n.4. Here, defendants clearly have a personal right in the confidential financial information sought. See, e.g. Schmulovich v. 1161 Rt. 9 LLC, 2008 WL 4572537 *4 (D.N.J. 2008); In re REMEC, Inc. Secs. Litigation, 2008 WL 2282647 *1 (S.D. Ca.. 2008); Terwillegar v. Offshore Energy Servs., Inc., 2008 WL 2277879 *3 (E.D. La. 2008). Accordingly, the court concludes they have standing to challenge the subpoena.

   **2.   Relevancy**

Despite recent changes to the rules of civil procedure, courts agree the scope of discovery under the Federal Rules of Civil Procedure is extremely broad. See 8 Fed. Prac. & Proc. Civ. § 2007. As indicated above, when a party resists discovery on the grounds of relevancy, it is up to the requesting party to first establish a threshold relevance of the discovery requested. It then falls to the resisting party to establish grounds not to provide the discovery.

After defendants made their initial argument that the scope of documents prior to June 23, 2016, and after January 12, 2017, were not relevant, Colonial came forward with detailed and convincing arguments for the relevancy of each category of documents it is requesting in the subpoenas. In their reply brief, defendants do not counter these arguments. The court finds

11

Colonial has satisfied its initial burden to demonstrate the relevancy, for purposes of discovery, of the documents requested. Specifically, even if Colonial were to accept at face value defendants' representation that Ms. Tawzer obtained the loans by fraud, both parties have pleaded equitable theories of recovery and defense. It necessarily, therefore, brings into question whether defendants benefitted from the loans by being the ultimate recipient of the funds or benefitted in some other way. The documents will bear out who has the greater equitable right to the money. Colonial has a right to "follow the money" to see where it went. The documents requested are at the center of the claims and defenses presented in Colonial's lawsuit.

    **3.    Overbroad**

Defendants also argue that the scope of the subpoenas are overbroad in that they cover too long a time frame. Defendants would like the subpoenas modified to include only documents from June 23, 2016, to January 12, 2017, the dates covering when Colonial advanced funds to defendants. As discussed in the "relevancy" section of this opinion immediately above, given the amount of money loaned and, apparently, the complexity of defendants' interdealings with each other (according to the investigating agent's grand jury testimony), the time period requested by Colonial does not appear to be overbroad to this court. The burden is on defendants as the resisting party to establish a basis to quash or modify the subpoenas and they have not done so. Penford Corp. v. National Union Fire Ins. Co., 265 F.R.D. 430, 433 (N.D. Iowa 2009); St. Paul

Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000).

In PHE, Inc. v. Does 1-27, 2013 WL 3225811 at *1 (E.D. Mo. June 25, 2013), a plaintiff filed suit alleging certain John/Jane Does had violated plaintiff's copyrights by downloading plaintiff's movie using an internet-based application known at Bit Torrent. The only identifying information plaintiff had about the Does was their Internet Protocol ("IP") addresses. Id. Plaintiff served a subpoena on the internet service providers for the IP addresses seeking the subscription information for each of the IP addresses. Id. The Does moved to quash the subpoena, asserting, among other things, that the IP addresses might not correspond to the person who downloaded the movie. Id. at *3. The Does argued that the responsible person might be a visitor, a neighbor, or someone using the wireless signal from a car parked on the street. Id. The Does also argued their reputations would be damaged by having their names released to plaintiff. Id.

The court rejected these concerns, noting that the information sought need not be admissible in court as long as it was reasonably likely to lead to the discovery of admissible evidence. Id. By finding out the identity of the owner of the IP addresses, plaintiff could begin to track down the actual users who downloaded plaintiff's movie. Id. As to the embarrassment factor, the court concluded that was unfortunate, but that was a fact faced by "countless litigants in our legal system." Id. The court denied the motions to quash. Id.

Similarly, here, the documents requested by Colonial's subpoena may include some documents not directly related to the claims and defenses in this lawsuit. But they have great potential to lead to the discovery of admissible evidence, i.e. showing where the funds advanced by Colonial went. It may be potentially embarrassing to defendants to have these documents explored. It may affect defendants' negotiation stance in this case vis-à-vis Colonial. Such are the vagaries of litigation. They are unavoidable. Defendants cannot assert that the loans were obtained by fraud and that they received none of the loan proceeds without allowing Colonial to prove (or disprove) those assertions.

As to the time frame set forth in the subpoena, the court finds it is not overbroad. Colonial has a right to determine if the financial condition when it granted its first loan was as represented to it. Colonial is only seeking documents stretching back six months from the first loan date. That is reasonable. Likewise, Colonial has a right, given defendants' defenses and factual representations in this lawsuit, to attempt to unravel defendants' financial entanglements and determine if any of the defendants themselves ended up with the loaned funds in their pockets or benefitted in some other way from the funds. The post-loan time period requested by the subpoenas exceeds what defendants have requested by only 15 months. That does not seem excessive given the large amounts of money loaned and Mr. Bunker's application for and receipt of articles of dissolution for two of the companies. It also seems a reasonable time period given the investigatory agent's testimony at the grand jury.

### 4. Unduly Burdensome

Defendants contend that the subpoenas are unduly burdensome to comply with for the non-party banks on which they were served. Only the banks themselves can raise this objection, see FED. R. CIV. P. 45(d)(3), and none of the banks have done so. Furthermore, at least one bank had already compiled the documents and made them available to Colonial in advance of the April 2, 2018, production date. This also belies any argument that the subpoenas are unduly burdensome for the banks to comply with.

### 5. Confidentiality/Privacy

The last wrinkle in this discovery dispute concerns protecting the privacy of the documents. When the parties submitted their Form 52 report to the district court, they indicted they were discussing stipulating to the terms of a protective order. See Docket No. 29 at p. 6, ¶ k(1). The final terms of that stipulation had not yet been agreed upon by the parties. Id. However, a form of a protective order that was agreeable to Colonial, but not to defendants, was attached to the Form 52 report. Id.; see also Docket No. 29-1. After waiting a month and hearing nothing further from the parties, the district court entered the protective order submitted by Colonial. See Docket No. 30.

Following this action by the district court, defendants never moved to vacate the order or to modify it. In the context of this motion to modify Colonial's bank subpoenas, defendants represent that the protective order was unsatisfactory to them. However, defendants never explain *in what particulars* the existing order is unsatisfactory. Nor do defendants suggest additional

specific protections they wish to have applied to the bank records which are the subject of Colonial's subpoenas.  The court finds defendants have had ample opportunity to amend or adjust the terms of the protective order—in general, or as applied to the current subpoenas—and defendants have sat on their hands.  The court finds the existing protective order entered by the district court adequately protects the subpoenaed documents.  Accordingly, confidentiality is not a valid basis for modifying or quashing the subpoenas.

## CONCLUSION

Based on the foregoing law, facts, and analysis, it is hereby

ORDERED that defendants' motion to modify the four subpoenas issued by Colonial [Docket No. 40] is denied.  All such documents produced by the non-party recipients of the subpoenas shall be considered confidential under the district court's protective order and handled accordingly.  It is further

ORDERED that defendants' request for oral argument [Docket No. 57] is denied.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be

timely and specific in order to require review by the district court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781 F.2d 665 (8th Cir. 1986).

DATED this 30th day of May, 2018.

BY THE COURT:

/s/ Veronica L. Duffy
VERONICA L. DUFFY
United States Magistrate Judge